UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

RONALD G. ANDERSON and
SANDRA M. ANDERSON,

              Debtors.

Case No. 11-22650

Chapter 13

---

MEMORANDUM DECISION ON OBJECTION TO CONFIRMATION OF PLAN

---

     The debtors filed a chapter 13 petition and plan on March 1, 2011. American Home Mortgage Servicing, Inc., as servicing agent for Federal National Mortgage Association, opposed confirmation on the grounds, inter alia, the plan violated its rights under 11 U.S.C. § 1325(a)(5)(B), and sought to modify the terms of the mortgage secured by the debtors' principal residence in violation of 11 U.S.C. § 1322(b)(2). The debtors responded to the objection by opposing the creditor's standing as holder of the mortgage only, which encompassed no right to enforce personal liability on the non-signers of a note that exceeded the value of the property. Both parties submitted briefs in support of their respective positions.

     This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated, the objection to confirmation is sustained.

BACKGROUND

     The material facts are not in dispute. During all relevant times, the debtors' primary residence was a house on approximately 20 acres owned by Ms. Anderson in Wautoma,

Wisconsin. The debtors filed a previous chapter 13 case in 2002. In an effort to pay off a maturing mortgage on their homestead with a different lender, and to successfully complete that plan, they sought financing through two gentlemen by the names of Christopher Proulx and Shawn Wahle. The debtors have designated the resulting transaction a "foreclosure rescue scam" with predictably convoluted transactions. At the closing, Ms. Anderson sold her home to Mr. Proulx for $119,250, the latter having financed the purchase through a $95,400.00 mortgage with New Century Mortgage Corporation (WB-11 Residential Offer to Purchase dated October 20, 2005; U.S. HUD Settlement Statement dated December 27, 2005). The original Residential Offer to Purchase included both the homestead and an adjacent parcel  Although the offer was later amended to remove the extra acres from the purchase, they were included in the deed and mortgage. At the same closing, Mr. Proulx gave Ms. Anderson a "seller carryback"[1] promissory note and mortgage on the property in the amount of $17,887.50, which the county refused to record because the mortgage document was not legible. (Promissory Note dated December 7, 2005; Mortgage dated December 27, 2005; Letter from Nations Title Agency of Minnesota, Inc., dated August 24, 2006). Mr. Proulx also signed a note to the Andersons for $23,860.00. (Note dated December 7, 2005). The debtor's first mortgage of $39,915.83 and delinquent real estate taxes of $7,152.96 were paid in full, and after rather exorbitant closing costs and settlement charges were assessed, Ms. Anderson received proceeds of $43,091.45. (U.S. HUD Settlement Statement dated December 27, 2005). A portion of the proceeds was used to pay off the chapter

---

[1] A seller carryback is when the seller agrees to "carry back" some part of the purchase price themselves. The seller accepts a certain amount of the purchase price in the form of a promissory note from the buyer, usually secured by the property.

13 plan and the debtors received a discharge on February 10, 2006. Another portion of the proceeds was split with Messrs. Proulx and Wahle for their assistance.

On March 13, 2007, Mr. Proulx refinanced his New Century mortgage for a $116,000.00 loan with American Brokers Conduit. The note provided for payments of interest only at 7.25% for 120 months and a maturity date of April 1, 2037. In August 2007, he sold off the land that was not supposed to be part of the transaction with Ms. Anderson to Jack Scimeca and retained the $57,000 proceeds for himself. American Home Mortgage Servicing, Inc., eventually released its interest in this parcel. (Partial Release of Mortgage dated June 1, 2009). In March 2007, before this transfer to Mr. Scimeca, the entire property was appraised at $145,000. (EMT Appraisals' estimate of value dated March 1, 2007). The current value of the property remains in dispute and will not be determined by the Court at this time, but it appears that both sides agree that the value is less than the amount owed on the note and set by the judgment of foreclosure.

On February 27, 2008, American Home Mortgage Servicing, Inc., the holder[2] of the note and assignee of the mortgage, commenced a foreclosure action[3] against Mr. Proulx, naming the debtors as "Unknown Tenants." The debtors answered the complaint alleging, inter alia, that their interest in the property was paramount to American Home's.

Ms. Anderson subsequently settled her dispute with Mr. Proulx. On October 19, 2009, Ms. Anderson released her alleged claims against Mr. Proulx in exchange for a quit claim deed to

---

[2] Fannie Mae currently owns the indebtedness, but American Home continues to service it.

[3] After discovering that the wrong legal description was attached to the mortgage, American Home executed a partial release of Mr. Scimeca's parcel. Subsequent assignments of the mortgage have added back the released parcel. American Home has stated in its brief that its mortgage only intended to encumber the residential property, not the parcel transferred to Mr. Scimeca. Mr. Scimeca was not a party to the foreclosure action.

the property not owned by Mr. Scimeca. The Andersons, as unnamed tenants, and American Home stipulated to entry of a judgment of foreclosure on July 1, 2010, and on July 7, 2010, the state court entered a judgment. (Waushara County Circuit Court Case No. 08 CV 60, Findings of Fact, Conclusions of Law and Summary Judgment, dated July 7, 2010). As of the date of the state court proceedings, $149,725.19 was due on the mortgage.

The debtors filed a chapter 13 petition and plan on March 1, 2011, proposing to pay American Home Mortgage Servicing, Inc., $316.32 monthly for 36 months and then approximately $34,200.43 in a balloon payment at the end of the 36 month period, for a total payment of $40,000.00 amortized over 15 years at 5% interest per year. This provision is in essence a cramdown to the value of the property retained by the debtors. American Home, as servicing agent for Federal National Mortgage Association, opposed confirmation on the grounds, inter alia, the plan violated 11 U.S.C. § 1325(a)(5)(B) and sought to modify the terms of the mortgage secured by the debtors' principal residence in violation of 11 U.S.C. § 1322(b)(2). While arguing in support of their plan, the debtors also reserved an objection to American Home's standing to oppose confirmation. Both parties submitted briefs in support of their respective positions.

ARGUMENTS

According to the debtors, 11 U.S.C. § 1322(c)(2) does not prohibit them from modifying what they describe as a predatory interest-only mortgage. Although they took back the real estate subject to the security interest of American Home, they were never a party to the note, and they did not have standing to challenge the terms of the note in the state court foreclosure proceedings. While they agree they are subject to the mortgage, they are not liable on the note.

4

Because the terms of the note only bind the signors of the note, the debtors' obligation to pay only arises from the lien, which can have no more value than the collateral secured by it. *See Mitchell Bank v. Schanke*, 2004 WI 13, ¶ 42, 268 Wis.2d 571, 676 N.W.2d 849 ("'In Wisconsin, the cause of action on a note evidencing an indebtedness and the cause of action to foreclose the mortgage on real estate that secures the indebtedness are distinct.'" (quoting *Bank of Sun Prairie v. Marshall Dev. Co.*, 2001 WI App 64, ¶ 12, 242 Wis.2d 355, 626 N.W.2d 391)). They should thus be allowed to "cram down" the mortgage judgment lien on the property and pay only the value of the secured portion through their plan.

Additionally, American Home may not enforce the security agreement until it verifies that it is servicing the mortgage on behalf of Fannie Mae.[4] The debtors further contend that they are entitled to the same relief afforded the debtor in *In re Walker*, 405 B.R. 300 (Bankr. E.D. Wis. 2009), wherein the defrauded debtor was entitled to set aside the contract and the parties' interests were restored to the state preceding the fraud.

American Home argues the *Rooker-Feldman* and *res judicata* doctrines bar the debtors from challenging its standing to oppose confirmation of the plan because the state court has entered a judgment of foreclosure. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999); *In re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y. 2011); *In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010). American Home is the assignee of record and holder of the note, which is endorsed in blank. *See* Wis. Stat. §§ 401.201(20), 403.205(2). Therefore, the argument

---

[4]In the event the Court holds that they are bound by the terms of the contract, the debtors reserved the right in their reply brief to challenge whether American Home has the right to collect the payments under the terms of the note. As of the date of that brief, American Home had not documented, to the satisfaction of the debtors, that it was the servicing agent of Fannie Mae.

continues, American Home may enforce the note by filing a proof of claim and objecting to confirmation of the debtors' proposed plan.

American Home points out that the mortgage was accelerated by default when the foreclosure judgment was entered, and the plan's proposal to modify its mortgage violates the anti-modification provision of 11 U.S.C. § 1322(b)(2). Under controlling law, *see Matter of Clark*, 738 F.2d 869 (7th Cir. 1984); *Bank of Commerce v. Waukesha County*, 89 Wis. 2d 715, 279 N.W.2d 237 (1979), its note and mortgage remain intact and enforceable in this case. Section 1322(b)(2) does not require that the debtors be in privity with American Home. Even though she held a note from Mr. Proulx, Ms. Anderson released all claims against him and took back the property with actual knowledge of American Home's mortgage.

## DISCUSSION

In the case at bar, the debtors have set forth in Schedule C that the property is their homestead, and the debtors reside on the property; therefore, the property is the debtors' principal residence. There is no question that Fannie Mae holds a lien on the property and that it has no other collateral securing the first lien note. The issue here – whether a chapter 13 debtor with no personal liability on an accelerated loan on a principle residence may strip the mortgage down to the value of the real estate – presents two competing bankruptcy principles.

<u>Bankruptcy Principle No. 1: The Anti-Modification Exception of *Nobelman v. Am. Sav. Bank*</u>.

One the one hand, section 1322(b)(2) prohibits the modification of a claim that is secured only by a security interest in real property that is the debtor's principal residence. In *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the United States Supreme Court has stated that the "rights" referred to in section 1322(b)(2) are those reflected in

6

the relevant mortgage instruments, which are enforceable under state law. The *Nobelman* decision is instructive in multiple ways. In that case, a unanimous Court held that the limiting language of section 1322(b)(2) applied to prevent chapter 13 debtors from stripping down the undersecured portion of the loan secured by the debtors' principal residence. The mortgage encumbering the Andersons' homestead is likewise undersecured.

The basic facts in *Nobelman* were uncontroverted. The debtors fell behind on their mortgage, so they filed a chapter 13 case. The value of the property was about one-third the amount of the debt, and the debtors proposed to pay only the current value, treating the difference as unsecured, with unsecured creditors receiving nothing. The debtors argued that the anti-modification language of section 1322(b)(2) applied only to the extent the mortgagee held a secured claim in the residence and the court must look first to section 506(a) to determine the value of that claim. The Court explained the debtors' syllogism:

> Section 506(a) provides that an allowed claim secured by a lien on the debtor's property "is a secured claim to the extent of the value of [the] property"; to the extent the claim exceeds the value of the property, it "is an unsecured claim." Petitioners contend that the valuation provided for in § 506(a) operates automatically to adjust downward the amount of a lender's undersecured home mortgage before any disposition proposed in the debtor's Chapter 13 plan.

508 U.S. at 328. The Court then responded to the debtors' argument with an important discussion, stating:

> This interpretation fails to take adequate account of § 1322(b)(2)'s focus on "rights." That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modification of the " rights of holders " of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home.

*Id*. The Court recognized that applying section 506(a) would acknowledge the bank had a

7

secured claim for the value of the property; "however, that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Id*. at 329.

The Court continued:

> The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law." Moreover, we have specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests," including the interest of a mortgagee." The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure . . . . These are the rights that were "bargained for by the mortgagor and the mortgagee," . . . and are rights protected from modification by § 1322(b)(2).

*Id*. at 329–30 (citations omitted).

Thus, if there were no material facts other than an undersecured mortgage, the plan provision cramming down the creditor's claim to the value of its security would be unconfirmable.

Bankruptcy Principle No. 2: Non-Recourse Obligations After *Johnson v. Home State Bank*.

Prior to the *Nobelman* decision, the Supreme Court considered the nature of a secured obligation that remains after the borrower receives a chapter 7 discharge in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In *Johnson*, the bank held a mortgage secured by a debtor's farm property. The bank commenced foreclosure proceedings under state law based on the debtor's default on his obligations under the mortgage. Before the

8

bank's foreclosure sale, the debtor filed a petition for relief under chapter 7, through which he obtained a discharge of his personal liability to the bank.

The bankruptcy court then lifted the automatic stay, allowing the bank to obtain an *in rem* judgment against the debtor's property. Prior to the new foreclosure sale date, the debtor filed a petition for relief under chapter 13 and included the bank's interest arising from its mortgage on his property as a claim to be treated through his plan. Against the bank's objection, the bankruptcy court confirmed the 13 plan. On appeal, the district court and the Tenth Circuit both disagreed with the bankruptcy court and held that the bank did not hold a claim against the debtor because his personal liability was discharged in his chapter 7 bankruptcy case. Accordingly, the debtor could not use his chapter 13 plan to cure arrears under the mortgage held by the bank.

On subsequent appeal, the Supreme Court overruled the decisions of the district and circuit courts. It interpreted the term "claim" in the Bankruptcy Code broadly to include a "mortgage interest that survives the discharge of a debtor's personal liability." 501 U.S. at 84. The Court explained that, even without the debtor's personal obligations "the mortgage holder still retain[ed] a 'right to payment' in the form of the right to the proceeds from the sale of the debtor's property" or, in the alternative, the bank's right to foreclose "can be viewed as 'an equitable remedy' for the debtor's default on the underlying obligation." *Id*. The Court continued:

> In other words, the court must allow the claim if it is enforceable against either the debtor or his property. Thus, § 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property. Similarly, § 102(2) establishes, as a "[r]ul[e] of construction," that the phrase " 'claim against the debtor' includes claim against property of the debtor." A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's

9

property nonetheless has a "claim against the debtor" for purposes of the Code.

*Id*. at 85. The *Johnson* Court found support for its view in the legislative history of section 102, noting:

> The legislative history surrounding § 102(2) directly corroborates this inference. The Committee Reports accompanying § 102(2) explain that this rule of construction contemplates, inter alia, "nonrecourse loan agreements where the creditor's only rights are against property of the debtor and not against the debtor personally." Insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan .... [I]nsofar as Congress did not expressly limit § 102(2) to nonrecourse loans but rather chose general language broad enough to encompass such obligations, we understand Congress' intent to be that § 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence.

Id. at 86–87 (citation omitted).

*Johnson* is thus recognized for its holding that even though a debtor has discharged his or her personal liability on the obligation on a mortgage in a chapter 7 case, the debtor may still file a chapter 13 case to address the lender's claim against the debtor's real property. In this case, the debtors' lack of personal liability on the obligation is not the result of a chapter 7 discharge; it is the result of acquiring property subject to a mortgage, followed by a state court foreclosure without deficiency. American Home's claim is likewise only *in rem* as to the property, not *in personam* with recourse against Ms. Anderson.

A debtor may never have personal liability on the debt secured by the mortgage. Such is the nature of a nonrecourse mortgage. It may occur, as in *Johnson*, with a chapter 7 discharge, or as in the current case, taking title to encumbered property, followed by a foreclosure without deficiency. Several courts have addressed whether a debtor with encumbered property, which was transferred to the debtor without the lender's consent, may modify the lender's lien rights.

Generally, the issue has arisen when the debtor is not the original mortgagor but nevertheless proposes a chapter 13 plan to prevent the lender from invoking its foreclosure rights under the due on sale clause. A majority of courts have permitted the debtor to *cure* the default under the mortgage, even if the debtor lacks privity with the mortgagee.

The apparent majority view allows a debtor to include such a mortgage in the plan based on a broad interpretation of the term 'claim' even though the debtor is not in privity with the mortgagee. *E.g., In re Newcomer*, 438 B.R. 527, 542 n. 14 (Bankr. D. Md. 2010) (stating majority view since *Johnson* that it is appropriate to permit chapter 13 debtor who is owner of real property to cure prepetition default under mortgage, even if debtor lacks privity with mortgagee); *In re Brown*, 428 B.R. 672 (Bankr. D. S.C. 2010) (holding debtor who lived on real property subject to reverse mortgage which had been accelerated prepetition, following her mother's death, and on which, as result of this acceleration, last mortgage payment was due prior to final payment under debtor's 60-month plan, could pay the entire reverse mortgage debt over life of her plan, pursuant to statutory exception to antimodification provision, section 1322(c)(2)); *In re Flores*, 345 B.R. 615, 617 (Bankr. N.D. Ill. 2006) (holding wife who was not original signor could include property in plan because it was community property).

Not all courts have been willing to confer the benefits of chapter 13 cure provisions on debtors who have acquired encumbered property in violation of due on sale clauses. *See, e.g., In re Tewell*, 355 B.R. 674, 681 n. 7 (Bankr. N.D. Ill. 2006) (holding debtor who obtained residential property from original mortgagor without adhering to due on sale clause was not permitted to cure mortgage defaults through plan; finding *Johnson* distinguishable on facts); *see also In re Mullin*, 433 B.R. 1 (Bankr. E.D. Tex. 2010) (concluding "a debtor who obtained

11

residential property from the mortgagor without adhering to the due on sale clause is not permitted to cure the mortgage defaults through the Chapter 13 plan over the objection of the mortgage holder").

The debtors are not seeking to cure and reinstate the mortgage. The cases that allow curing of a default and reinstatement of a default might be persuasive, but they simply do not apply to what the debtors are trying to do. They want to reduce the creditor's secured claim and to pay total payments equaling only the present value of the collateral.

The right to cram down a secured creditor's interest in a debtor's principal residence does not arise from lack of personal liability on the note. The creditor still has the bundle of rights described in *Nobelman*, and these cannot be modified by the debtors' proposed plan provision. *See In re Garcia*, 276 B.R. 627, 635 (Bankr. D. Ariz. 2002) (noting "a cure is not an exception to the antimodification provision, because modifications and cures deal with wholly distinct, mutually exclusive, legal concepts"). The creditor is not attempting to collect personally from the debtors; it is entitled to its *in rem* rights in the property, which are embodied in the original note and mortgage, but that does not equate to personal liability on the part of the debtors. Ms. Anderson took the property with these rights attached, and the debtors could walk away from the property with no further personal liability. The inclusion of the debtors' cramdown provision renders the plan unconfirmable.

Applicability of 11 U.S.C. § 1322(c)(2).

Section 1322(c)(2) provides an important exception to section 1322(b)(2), providing debtors with the opportunity to pay a mortgage indebtedness that has matured or matures during the term of a chapter 13 plan. Section 1322(c)(2) states:

12

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law –
>
> . . .
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c). The debtors in this case argue that their proposed modification is allowed under this provision. Section 1322(c)(2) provides for de-acceleration and cure of the matured secured claim, but the modification is in the timing of payment, i.e., it may extend over the term of the plan, with the same protections provided the secured creditor by section 1325(a)(5). It does not change the rights of the holder of the claim. Furthermore, this section only applies when the last payment on the *original payment schedule* is due before the plan completes. The last payment on the original debt in this case would have been April 1, 2037. The mortgage was accelerated by default and the foreclosure judgment creates a new due date, but it does not change the *original* date. *See, e.g., In re Rowe*, 239 B.R. 44 (Bankr. D. N.J. 1999). Section 1322(c)(2) does not apply in this case.

Requirement of Equal Plan Payments.

Additionally, under the Bankruptcy Code, payments to secured creditors whose claims are to be paid in full under the plan must be in equal amounts. 11 U.S.C. § 1325(a)(5)(B)(iii)(I). In *In re Wagner*, 342 B.R. 766 (Bankr. E.D. Tenn. 2006), the debtor's proposed chapter 13 plan provided for payment of the mortgagee's surviving *in rem* claim, following the discharge of the debtor's personal liability for the debt in her prior chapter 7 case, by 23 payments of $728.00 per month and a balloon payment in the 24th month of the plan. The bankruptcy court sustained the creditor's objection to confirmation, finding the plan did not provide for periodic payments to the

13

mortgagee in "equal monthly amounts," as required by section 1325(a)(5)(B)(iii)(I). In order to obtain confirmation, the Andersons' plan must provide for equal monthly payments to the secured creditor over the life of the plan until the lien claim is satisfied. Such treatment cannot then allow for a balloon payment in the final month, as proposed by the debtors.

<u>Claim Preclusion and Standing</u>.

American Home argues the debtors cannot at this time challenge their standing as creditors to object to their plan or to collect amounts due under their plan. The Andersons participated in the foreclosure action, in which American Home was the plaintiff, and stipulated to judgment, including the amount due. They could have raised the issue of whether American Home was a proper party and did not do so.

While the amount of the foreclosure judgment is subject to claim preclusion, *see In re Back Bay Restorations, Inc.*, 118 B.R. 166, 169-70 (Bankr. D. Mass. 1990) (noting bankruptcy courts bound by prior judgments of amount of resulting damages), the status of the creditor as claimant may have changed since then. The creditor still must prove it is entitled to payment as mortgagee, servicer or other means. This issue will be the subject of further proceedings related to the debtors' objection to the claim.

Even if American Home is not able to prove its status as a creditor for the purpose of receiving distributions pursuant to a plan, the Court cannot ignore issues raised by it. The bankruptcy court cannot confirm a plan that contains provisions contrary to law, no matter how those defects come to its attention. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (finding bankruptcy courts presented with plan proposing discharge of student loan debt without determination of undue hardship in adversary proceeding

should not confirm such plan, even if creditor fails to object or to appear at proceeding at all). For the reasons stated above, the debtors' proposed plan cannot be confirmed. A separate order consistent with this opinion will be entered.


September 29, 2011

Margaret Dee McGarity
United States Bankruptcy Judge